UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

UNITED STATES OF AMERICA

v. Case No. 1:25-CR-33

SANIA KHAN

---

**MOTION TO DISMISS**

Defendant Sania Khan, through undersigned counsel and pursuant to Federal Rules of Criminal Procedure Sania Kahn, through undersigned counsel and pursuant to Fed.R.Crim.P. 12(b)(3) and the U.S. Constitution, moves for dismissal of the Indictment.

Under Rule 12(b)(3)(B), the district court may hear a motion to dismiss alleging that the indictment fails to comply with relevant pleading requirements in alleging an offense. *See* Fed. R. Crim. P. 12(b)(3)(B) (motions asserting the following indictment defects "must be raised by pretrial motion": "(i) joining two or more offenses in the same count (duplicity); (ii) charging the same offense in more than one count (multiplicity); (iii) lack of specificity; (iv) improper joinder; and (v) failure to state an offense"). The interrelatedness of these requirements arises from Fed. R. Crim. P. 7(c)(1). "To be legally sufficient, an indictment must contain 'a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]' *United States v. Schmitz*, 634 F.3d 1247, 1261 (11th Cir. 2011) (quoting Rule 7(c)(1)); *see also United States v. McQueen*, No. 11-20393-CR, 2011 WL 4375729, at *2 (S.D. Fla. Sept. 16, 2011) (same).

"Rule 12(b) ensures that trials will be efficient and that defendants raise defenses 'which [are] capable of determination without the trial of the general issue' before trial." *United States v.*

*Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988) (quoting Fed.R.Crim.P. 12(b); *United States v. Griffin*, 765 F.2d 677, 681 (7th Cir.1985)). "Rule 12(e) also allows the Court to consider factual issues in its disposition of 12(b) motions." *Id.* (citations omitted). Meanwhile, Rule 7(f) allows a defendant to move for a bill of particulars, and Rule 7(d) provides for the striking of prejudicial surplusage.

Ms. Khan is charged in the Indictment with two counts of healthcare fraud, in violation of 18 U.S.C. § 1347; seven counts of obstruction of justice, in violation of 18 U.S.C. § 1519; five counts of false statements related to health care billing and service matters, in violation of 18 U.S.C. § 1035; three counts of sale of sample drug, in violation of 21 U.S.C. § 331(t); and one count of attempted witness tampering, in violation of 18 U.S.C. § 1512(b)(1).

## I. Counts I and II, the fraud counts, must be dismissed.

The fraud allegations are as follows: Ms. Khan is the office manager of Allen County Retinal Surgeons (ACRS), the opthamology practice owned by her physician husband. The Indictment alleges that ACRS "sometimes" failed to obtain prior authorization for administration of commercial medications—and would instead submit reimbursement for free samples administered on other occasions to other patients.

According to the government, the "claims were false because the claims purported to bill for commercial doses when a sample dose was administered on that date of service." DE:1:8. The Indictment does not allege how the claim submission set forth the commerciality label for the medication at issue. However, the government alleges that "[i]f the claims had contained truthful and accurate information about the sample doses, these programs would not have paid the claims." *Id.* The government does *not* allege that there is any material compositional difference between commercial and non-commercial doses. Rather, the fraud counts advance an improper regulatory

theory of fraud that seeks to substitute for traditional notions of fraud, and use of that regulatory theory violates *Loper Bright v. Raimondo*, 603 U.S. 369 (2024). The Indictment improperly defers to regulatory interpretation—relying not even on regulations but rather on a "short guide" published by HHS—in charging fraud under such a theory. *See* DE:1:6 ("The HHS Office of Inspector General published a short guide for new physicians, and this publication clearly informed medical providers that, while it is legal to give samples to patients for free, it is illegal to sell these samples or seek reimbursement for samples and that providers *must ensure that free samples were not commingled with commercial samples*") (emphasis added). This reference to the HHS "short guide" reveals the government's deficient materiality theory—that any product handling the regulatory agency wants to discourage is *per se* material and sufficient to allege criminal fraud—and also introduces an improper "commingling" theory into the Indictment, thereby improperly watering the burden of proof down to recklessness. Moreover, the government never alleges that Ms. Khan read this "short guide." And perhaps most importantly, a "short guide" published by the HHS Office of Inspector General does not have the force of law. This purported non-compliance theory of fraud—untethered, even, to any codified regulation—is at odds with the Supreme Court's decision in *Loper Bright*, 603 U.S. 369 restraining ad hoc agency lawmaking, and violates the fundamental rights of the defendant.

Individuals, particularly those who are not doctors, are not on reasonable notice that purported regulatory non-compliance is grounds for a massive fraud indictment; this creates due process and separation-of-powers vagueness problems as well. *See Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (void-for-vagueness doctrine "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited

and in a manner that does not encourage arbitrary and discriminatory enforcement").

The Indictment fails to allege substantive health care fraud in either Count 1 or Count 2 for multiple reasons apart from its mistheorization of regulatory non-compliance as fraud, including the following.

**A. Counts 1 and 2 fail to state an offense of substantive healthcare fraud in violation of 18 U.S.C. § 1347**

**i. The government improperly treats "scheming" as the actus reus to avoid proof deficiencies as to any specific execution of fraud**

In *United States v. Longfellow*, 43 F.3d 318 (7th Cir. 1994), the Seventh Circuit "ruled that the bank fraud statute is meant to punish each 'execution' of the scheme to defraud[.]'" *United States v. Anderson*, 188 F.3d 886, 889 (7th Cir. 1999) (Posner, J.). The *Longfellow* and *Anderson* decisions make clear that the *execution*, or attempted execution, and not the "scheme", is the *actus reus* of the statute. A plain language reading of the health care fraud statute confirms that *execution* is the actus reus. 18 U.S.C. § 1347 states: "Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice . . .".

The *verb* in the statute—i.e., what the statute prohibits *doing*—is the *execution*. "Scheme" as used in the statute is a *noun*, a direct object of the execution. If the scheming is treated as the *actus reus*, the statute falls apart, because there is no *mens rea* attached to the government's hypothetical verb form of scheming as the sentence is grammatically written. Rather, the *mens rea*, "knowingly and wilfully", modifies *execution* of a scheme. To be sure, the *mens rea* extends as well to the object—but the actus reus cannot be an object alone; it must be the doing of an object.

The Indictment flips this plain language on its head, and attempts to convert 18 U.S.C. § 1347 into a statute that punishes "scheming" (a thought crime, akin to a one-person conspiracy)

rather than *execution* or *attempted execution*. This allows the government to evade proof deficiencies related to any specific instances of execution. Counts 1 and 2 must be dismissed because the Indictment as alleged makes clear that the government has created a new crime: one where the actus reus is "scheming" (akin to making an agreement with oneself) rather than execution. Alternatively, either Count 1 or Count 2 must be dismissed due to multiplicity of allegation of the same scheme. Any suggestion that there were two schemes runs counter to the otherwise overarching nature of the charges of scheme. Both counts should be dismissed, and the two-scheme premise of the Indictment should also be stricken.

**ii. The Indictment fails to comply with the demands of Rule 7, fails to allege any specific execution of fraud, and fails to comply with constitutional pleading requirements**

The manner and means section of Count 1 (akin to a manner and means section of a conspiracy count) reveals the statutory deficiency in the government's theory. It does not allege with any requisite specificity any specific *executions*, but rather alleges that "ACRS ***sometimes*** failed to obtain the appropriate prior authorization" and that—again, apparently sometimes, as the Indictment does not allege when—"Khan submitted, and caused to be submitted, false claims to Medicare and Indiana Medicaid for reimbursement of free samples administered ***on other occasions***"—the Indictment does not say when—"***and/or*** administered to other patients". The "manner and means" section of Count 1 then improperly includes obstruction allegations that occurred long after the completion of any conceivably-alleged "execution" of a scheme to defraud.

The Indictment contains only general allegations more appropriate for a conspiracy charge—but it ***does not charge a conspiracy***. Nowhere in Counts 1 or 2 does the Indictment allege any specific false statement, nor on what date Ms. Khan is alleged to have sometimes submitted

these claims.

A valid indictment must contain the elements of the offense intended to be charged, and sufficiently apprise the defendant of what he must be prepared to meet. *Russell v. United States*, 369 U.S. 749, 763 (1962). An indictment not framed to apprise the defendant with reasonable certainty of the nature of the accusation against her is defective, although it may follow the language of the statute. *Id*. at 765. *See also id*. at 770 ("a bill of particulars cannot save an invalid indictment"). These pleading requirements have been described as "basic principles of fundamental fairness," *id*. at 765-66, and are not satisfied here. "A cryptic form of indictment in cases of this kind requires the defendant to go to trial with the chief issue undefined." *Id*.

Indeed, this requirement, of fairly informing the defendant of the charge against which she must defend, is constitutional in nature. *United States v. Resendiz-Ponce*, 127 S. Ct. 782, 788 (2007). *See also United States v. Bobo*, 344 F.3d 1076, 1083 (11th Cir. 2003) (relying on these pleading requirements to reverse healthcare fraud conviction where indictment made "only a broad allegation of fraud in a healthcare benefit program without the required specificity"; court noted that an "indictment that requires speculation on a fundamental part of the charge is insufficient"). That is the case here: without knowing *which claims* the government alleges to be fraudulent, Ms. Khan cannot possibly defend against the case. She is left to speculate as to what allegations she must be prepared to meet.

Similarly, the Indictment does not allege any specific false statement or material misrepresentation. It simply contains the broad allegation that Ms. Khan—at some unknown point over the course of a five-year period—the date of which execution could be anytime within or without the statute of limitations apparently—allegedly submitted a claim for reimbursement for

something that some agency deems not subject to reimbursement. This falls far short of alleging any actionable false representation, material or otherwise. Submitting claims for products or services that insurers do not cover is not a crime, nor are ordinary citizens on reasonable notice that it could ever be deemed such.

Counts 1 and 2 of the Indictment do not allege any misrepresentation or false and fraudulent statement or omission by Ms. Khan; nor what if any false or fraudulent statement or omission appeared on the claims that were purportedly submitted. "It is fundamental that a false statement is a factual assertion." *Williams v. United States*, 458 U.S. 279, 284 (6th Cir. 1982) (defining term in context of 18 U.S.C. § 1010). The false statement alleged must be "a factual assertion capable of confirmation or contradiction." *United States v. Kurlemann*, 736 F.3d 439, 445 (6th Cir. 2013)

Counts 1 and 2 contain only generalized prejudice; they are lacking in any specific allegations sufficient to comply with Rule 7, and must be dismissed as the trial cannot become an Easter egg hunt for what the government decides is a fraud execution, despite the government having never asked the grand jury to engage in that fundamental task. Rule 7(c)(1) *requires* that an "indictment . . . *shall* be a *plain, concise,* and *definite* written statement of the *essential facts* constituting the offense charged." Fed. R. Crim. P. 7(c)(1) (emphasis added). The Indictment's foregoing of these requirements and opting instead for generality and argument over facts is not a mere choice within prosecutorial discretion, but a violation of the defendant's fundamental rights.

**B. The Indictment must be dismissed on statutory time bar grounds**

The Indictment improperly charges a "scheme" to defraud in Counts 1 and 2, rather than alleging a specific instance of fraud. The government did not charge any conspiracy to commit healthcare fraud in Counts 1 and 2, but rather charged substantive healthcare fraud.

The Seventh Circuit does not appear to have decided whether 18 U.S.C. § 1347 can be a continuing offense—other than a particular execution's duration. It has, however, made clear, that"[b]ecause the continuing offense doctrine extends the statute of limitations, we are admonished to construe that term narrowly." *United States v. Yashar*, 166 F.3d 873 (7th Cir. 1999) (citing *Toussie v. United States*, 397 U.S. 112, 115 (1970)). Cases interpreting the similarly worded bank fraud statute, 18 U.S.C. § 1344, are instructive here.

In *United States v. Longfellow*, 43 F.3d 318 (7th Cir. 1994), and *United States v. Anderson*, 188 F.3d 886 (7th Cir. 1999) (Posner, J.), the Seventh Circuit considered time-bar arguments related to the bank fraud statute. In *Longfellow*, the Court "ruled that the bank fraud statute is meant to punish each 'execution' of the scheme to defraud, and not each act in furtherance of the scheme to defraud.'" *Anderson*, 188 F.3d at 889. As discussed above, the *execution*, or attempted execution, and not the "scheme", thus provides the *actus reus* of the statute.

"Ultimately, the decision of whether an action is an execution of the criminal scheme will be fact-intensive; there are several factors to consider, including, but not limited to, the ultimate goal of the scheme, the nature of the scheme, the benefits intended, the interdependence of the acts, and the number of parties involved." *Anderson*, 188 F.3d at 889. Here, the government has not alleged specific facts of execution within the statutory time bar. This is in part why the Indictment's failure to allege *any* specific execution is so problematic. The statute of limitations is not a "mere limitation upon the remedy, but a limitation upon the power of the sovereign to act against the accused." *Waters v. U.S.*, 328 F.2d 739, 743 (10th Cir. 1964). And Rule 7's specificity requirements help to ensure that indictments plead offenses within a statutory time bar—essential to prevent unjust and unfair prosecution where the sovereign has no power to act against the accused.

In the absence of any specific claims (executions) that it alleges are fraudulent, the government cannot pursue this broad sweeping "scheme theory." As the Indictment is charged, it enables the jury to convict if it finds *only* execution of a scheme occurring outside the statute of limitations or an "execution" having no connection to the grand jury's decisionmaking—but none occurring within the statute of limitations.

**C. The obstruction allegations in the fraud counts are prejudicial surplusage, do not allege an offense within the time bar, and must be stricken**

The Indictment also tacks on obstruction allegations, which are improperly included in the fraud counts as prejudicial surplusage. Such allegations do not adequately allege the "last act" of execution of any fraud scheme; any fraud scheme necessarily would have been completed earlier. *Cf. Anderson*, 188 F.3d at 891 (with respect to bank fraud, "The execution of the fraudulent scheme is complete upon the movement of funds. Ms. Khan moves to strike this prejudicial surplusage from the fraud counts. *See* Fed.R.Crim.P. 7(d) ("Upon the defendant's motion, the court may strike surplusage from the indictment or information"). To the extent that any such allegations, if proven, are relevant to the fraud count at all, it would only be via a state of mind theory—but that is evidence, not allegations of substantive fraud to be included in the "plain, concise, definite written statement" of the fraud charges. Any alleged efforts to avoid detection are not part of a fraud scheme, are included in the Indictment as prejudicial surplusage, and must be stricken.

**D. The fraud counts must be dismissed as unconstitutionally vague**

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v.*

*Stephenson*, 557 F.3d 449, 455 (7th Cir. 2009) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)). "A statute may operate in an unconstitutionally vague manner if it: '(1) does not provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited, or (2) fails to provide explicit standards to prevent arbitrary and discriminatory enforcement by those enforcing the statute.'" *Id.* at 455-56 (citing *United States v. Lim*, 444 F.3d 910, 915 (7th Cir.2006)). Unless a vagueness challenge threatens a First Amendment interest, a court must examine the challenge on an "as-applied" basis—that is, whether the statute is unconstitutionally vague in light of the facts of the case at hand. *Id.* at 456.

Here, the fraud counts must be dismissed because people of ordinary intelligence are not on notice that the conduct alleged could possibly be deemed a materially false statement as covered in the criminal fraud statutes. The Indictment itself fails to disclose the source of the purported rule from which the sample-reimbursement theory is derived; this creates substantial fair notice problems (both under the vagueness doctrine with respect to criminal offenses and as a matter of regulatory fair notice). The criminal fraud statutes do not permit unfettered regulation via agency-made policy, particularly that which has not apparently been subject to notice-and-comment nor has the force of law. The Indictment's reference to a "short guide" reveals the arbitrary enforcement problems here. The constitutional underpinnings of the void-for-vagueness doctrine preclude the government from using the criminal fraud statutes to punish any purported non-compliance with non-codified agency policy apparently published only in a short guide. If such prosecutions are sustained, this would allow for the creation of a new body of criminal regulatory law; without going through any notice-and-comment period, the government could rely on any policy statement ever made by an agency and treat noncompliance of such statements as a materiality. This is the essence of arbitrary

enforcement: non-compliance with a statement in a "short guide" published by the HHS OIG leaves too much deference to prosecutors to decide at a whim, on a post hoc case-by-case basis, that certain regulatory non-compliance equates to fraud. The fraud statutes do not reach so broadly.

**E. The fraud theory alleged in the Indictment violates *Loper Bright*; regulatory violations alone are not *per se* fraud**

The fraud counts of the Indictment rely on regulatory guidance which does not have the force of law and which rest on dubious footing following *Loper Bright v. Raimondo*, 603 U.S. 369, which interpreted the Administrative Procedure Act to task courts with closely reviewing statutes *de novo*—that is, exercising "independent judgment" rather than deferring to agencies' interpretations. *Id*. The Social Security Act is a comprehensive statute. Prior to *Loper Bright*, the issue of whether all matters not clearly resolved by statute could be expansively added to by the agency and in turn relied upon by prosecutors presented a different question than it does today. *Loper Bright* stands for the principle that courts, and not agencies, should be tasked with interpreting statutes. This agency-driven regulatory prosecution seeks to expand the healthcare fraud statutes beyond permissible bounds and is thus at odds with *Loper Bright*.

*Loper Bright* has real force in the enforcement context. In *United States Securities & Exchange Commission v. Amah*, 2026 WL 504794 (2d. Cir. 2026), the Second Circuit remanded on the theory that "[b]oth the SEC and the district court treated the SEC's prior interpretation of the Advisers Act as authoritative, and offered no substantive defense of that interpretation's correctness." *Id*. at *4. The government's Indictment provides *no* substantive defense for its deference not to an agency regulation but rather to an Inspector General's "short guide." This renders the fraud counts fatally deficient.

**II. The obstruction counts must be dismissed**

**A. Count 9 must be dismissed for failing to comply with constitutional notice requirements**

Count 9 must be dismissed. The Indictment fails to allege an offense in Count 9; it states that "[s]ometime between on or about May 31, 2020, and on or about February 5, 2023," Ms. Khan did "knowingly alter, destroy, conceal, cover up, falsify, and make a false entry in" a . . . medical record with the intent to impede, obstruct, and influence the investigation . . ." DE:1:16. The other obstruction counts, Counts 3-8, all allege a specific date. Count 9 charges a *three-year window*. This fails to comply with notice requirements because it fails to inform Ms. Khan of what are the specific allegations against which she must defend. Ms. Khan cannot adequately prepare a defense as to a *specific alleged instance* of obstruction without knowing when the government says that obstruction occurred. Additionally, and perhaps not by happenstance, the beginning of this three-year window commences *immediately* within the statutory time bar (four years and 362 days prior to the indictment is the first date of conduct alleged).

"It is axiomatic that 'a crime is made up of acts and intents; and these must be set forth in the indictment with reasonable particularity of time, place, and circumstances' if the charging document is to comport with the Constitution." *United States v. Hillie*, 227 F. Supp. 3d 57, 71-72 (D.D.C. 2017) (Jackson, J.) (quoting *United States v. Cruikshank*, 92 U.S. 542 (1875)). *See also* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation"). Count 9 fails to satisfy these constitutionally mandated principles. *See Hillie*, 227 F. Supp. at 72 (based on the indictment, "one only knows that Hillie did something involving visual depictions of sexually explicit conduct of a minor 'in the District of Columbia' ***during period of time that span two to three years*** . . . The indictment is

barren of factual averments regarding the what, where, or how of Hillie's conduct").

**B. All of the obstruction counts, counts 3-9, must be dismissed for failing to satisfy constitutional pleading requirements**

While Counts 3 through 8 contain more specificity as to date than Count 9, all of the counts must nevertheless be dismissed for similarly failing to comply with constitutional notice requirements as discussed above. The obstruction counts charge a statutory laundry list of obstruction means; "alter, destroy, conceal, cover up, falsify, and make a false statement" which leave the defendant guessing as to what the government has accused her of doing. Justice Jackson's decision in *Hillie* is instructive here as well: As recognized in *Hillie*, "an indictment that mirrors the exact language of a criminal statute may nevertheless be dismissed as constitutionally deficient if it is 'not framed to apprise the defendant 'with reasonable certainty[ ] of the nature of the accusation against him.'" *Id.* at 72 (quoting *United States v. Nance*, 533 F.2d 699, 701 (D.C. Cir. 1976) (in turn quoting *United States v. Simmons*, 96 U.S. 360, 362 (1877)). As Justice Jackson recognized: "Courts have found that it is especially important to include such facts and circumstances in cases where, by solely tracking the statutory language, the indictment's terms create ambiguity regarding the defendant's conduct." *Id.* at 70-71 (citing *United States v. Palfrey*, 499 F. Supp. 2d 34, 45 (D.D.C. 2007); *United States v. Carll*, 105 U.S. 611, 612 (1881) (finding that "it is not sufficient to set forth the offen[s]e in the words of the statute, *unless* those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offen[s]e intended to be punished")).

In *Hillie*, the indictment was found to be deficient even though the counts identified by initial the minor victim alleged there, just as the patient names are identified by initial here. As in *Hillie*,

counts 3 through 9 are fatally defective: they contain a laundry list of statutory alternatives but do not allege specific conduct.

**C. <u>The lack of particularity and specificity renders the obstruction counts multiplicitous of one another.</u>**

In dismissing the indictment in *Hillie*, Justice Jackson observed: "This lack of particularity or specificity regarding Hillie's actions also makes it impossible to discern—and therefore to distinguish between—the conduct underlying each separate count." *Id.* at 72. The same is true here: Due to the government's failure to allege with specificity the actual conduct underlying the counts, it is impossible to distinguish between the following counts (and whether each alleged instance of obstruction involved *separate* conduct or reflected a single act):.

<u>*Counts 7, 8, and 9*</u>: Counts 7 and 8 both allege obstruction on February 3, 2023; Count 9 contains the generic language spanning three years.

<u>*Counts 6 and 9*</u>: Counts 6 alleges July 19, 2022; Count 9 spans a three-year period that includes that date.

<u>*Counts 3, 4, 5, and 9*</u>: Counts 3, 4, and 5 both allege June 12, 2022; Count 9 spans a three-year period that includes that date.

Due to the lack of specificity and particularity in the conduct alleged the difference in alleged patient records identified does not allege separate conduct. This creates multiplicity problems, because the Indictment fails to adequately allege separate offenses by failing to allege the specific conduct that underlies each alleged act of obstruction.

**III. The false statement counts must be dismissed.**

**A. The Indictment fails to allege a false statement**.

Counts 10 through 16 of the Indictment fail to allege the specific false statement supposedly made and thus fail to allege an essential element of an 18 U.S.C. § 1035 violation. The counts must

be dismissed.

"Where the definition of an offence, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars." *Russell v. United States*, 369 U.S. 749, 765 (1962) (citing *United States v. Cruikshank*, 92 U.S. 542, 558 (1876)); *see also id.* at 770 ("a bill of particulars cannot save an invalid indictment"). "An indictment not framed to apprise the defendant 'with reasonable certainty, of the nature of the accusation against him is defective, although it may follow the language of the statute.'" *Id.* at 765 (citing *United States v. Simmons*, 96 U.S. 360, 362 (1877)). Counts 10 through 16 are fatally defective because the Indictment fails to allege the specific false statement that Ms. Khan is alleged to have made. Again, "it is not sufficient to set forth the offence in the words of the statute, unless those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Id.* (citing *United States v. Carll*, 105 U.S. 611, 612 (1881)). "Undoubtedly, the language of the statute may be used in the general description of an offense, but ***it must be accompanied with such a statement of the facts and circumstances as well inform the accused of the specific offense***, coming under the general description, with which he is charged." *Id.* (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)) (emphasis added). These pleading requirements have been described as "basic principles of fundamental fairness," *id.* at 765-66, and they were not satisfied here. "A cryptic form of indictment in cases of this kind requires the defendant to go to trial with the chief issue undefined." *Id.*

What the false statement actually is alleged to be is central to every 18 U.S.C. § 1035

prosecution. "Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." *Id.* at 752.

**B. The relevant statute, 18 U.S.C. § 1035(a)(2) does not reach the conduct apparently alleged.**

The false statement counts appear to mimic the obstruction counts (though the Indictment fails to specifically allege as much). The dates charged, however, suggest that the conduct alleged in the false statement counts is the same as alleged in the obstruction counts—that is, the post hoc altering or destruction of medical records. Section 1035 does not apply to such conduct.

The application of § 1035(a)(2) to false billing is well established. *See, e.g., United States v. Natale*, 719 F.3d 719, 734 (7th Cir. 2013) (error where jury instruction suggested "that the absence of health care benefits is irrelevant if the facts demonstrate a false statement made in connection with health care items or health care services"). The connection cannot be tenuous: the false statement must be made directly in connection with a specific claim. *See, e.g., United States ex rel. Williams v. Renal Care Grp., Inc.*, 696 F.3d 518, 532 (6th Cir. 2012) (reversing judgment premised on false Medicare provider enrollment form which relates to right to participate in Medicare, not to specific billing; "The regulations set forth in the United States's complaint are conditions of participation, the violation of which do not lead to False Claims Act liability."); *see also United States ex rel. Phalp v. Lincare Holdings, Inc.*, 116 F. Supp. 3d 1326, 1344 (S.D. Fla. 2015), *aff'd as modified sub nom. United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148 (11th Cir. 2017) ("A factually false claim occurs, for example, when a supplier submits a claim that misidentifies the goods supplied or requests reimbursement for goods that it never provided.").

Whatever other general liability may attach for the submission of a false statement to the government, Section 1035(a)(2) liability requires that the statement or entry specifically relate to fraudulent billing, the crucial "in connection with" limitation. The government seeks to broaden that here, rendering the counts defective, because it has not alleged the requisite "in connection with" element aside from restating the statutory language, which is insufficient. *Cf. United States v. Chhibber*, 741 F.3d 852, 8560 (7th Cir. 2014) (evidence that the defendant documented unreported medical symptoms and diagnoses supported conviction under § 1035(a)(2)); *United States v. Henderson*, 893 F.3d 1338, 1347 (11th Cir. 2018) (concluding that under Section 1035(a)(2), the charged "false statement could have misled a medical professional into thinking that the services actually had been rendered").

The false statement must relate directly to billing claims. The Indictment's failure to allege the required "in connection with" nexus of § 1035 (records were never submitted to Medicare, were created after all claims were paid, and were produced solely in response to a civil FCA investigation) renders the charges insufficient. The obstruction conduct apparently alleged here falls outside the reach of the statute. *See also Russell v. United States*, 369 U.S. at 760–61 (an indictment that fails to allege the essential elements of the crime charged violates both the Fifth and Sixth Amendments); *United States v. Huff*, 512 F.2d 66, 69 (5th Cir. 1975) (indictment count alleging an act which does not violate the statute should be dismissed); *Sutton v. United States*, 157 F.2d 661, 663–66 (5th Cir. 1946) (indictment was constitutionally deficient, prejudicing substantial rights of the defendant, in failing to set forth facts alleging a federal offense). The government's reading of the statute here appears to remove any force or meaning from the requirement that 18 U.S.C. § 1035(a)(2) liability attaches only where the false statements are made or used in connection with

false billing. This independently renders dismissal of Counts 10 through 16.

Based on counsel's reading of the Indictment (which again is separately defective because it fails to actually allege any of the facts necessary to bring § 1035 into play), the obstructed records alleged here were never presented to Medicare and were produced only in response to a civil FCA demand by the Justice Department. That cannot satisfy the required nexus because it is not in connection with the delivery or payment of benefits nor in connection with a health care benefit program. A tenuous connection is insufficient; *Natale* makes clear that the "in connection with" language has real teeth. The Court there also held that the false statement must be material *to the health care benefit program* and not to any other proceeding or entity. 719 F.3d at 733-34 ("In § 1035, the corresponding jurisdictional element is the health care benefit program requirement").

The allegations here, as understood by defense counsel, fail to satisfy that jurisdictional materiality requirement. The records alleged to be altered were never presented to Medicare; they were produced to the USAO civil division through defense counsel in response to an FCA demand. The government thus cannot plead any nexus between the altered records and Medicare's decision-making about payment or delivery of benefits. *See United States v. Mueller*, 74 F.3d 1152, 1157-60 (11th Cir. 1996) (obstructing discovery and filing misleading pleadings in civil suit brought by financial institution to recover dividends due did not support bank fraud conviction). In *United States v. Jones* (3d Cir. 2006), the Third Circuit held that the identical "in connection with the delivery of, or payment for, health care benefits" language in § 1347(2) was not satisfied where the alleged misconduct occurred after benefits had already been paid and delivered. The same is true here: All Medicare claims here were submitted and paid before any records were altered.

**IV. Count 20 must be dismissed because the allegations fail to specify the criminal conduct**

Count 20 alleges attempted witness tampering, in violation of 18 U.S.C. § 1512(b)(1). The count quite simply fails to offer anything but a statutory concept untethered to any actual allegation of conduct that might violate the statute. Nor does the count incorporate allegations from elsewhere in the Indictment. There is not allegation of an action or statement by which Ms. Khan is alleged to have attempted to intimidate, threaten, corruptly persuade, or mislead anyone, much less how the subject of the attempt was affected. To the extent that Count 20 does allege the attempted tampering occurred in connection with a conversation between two co-workers where Ms. Khan asserted her position in defense of her conduct, it is entirely insufficient under Rule 7 and would convert any denial of guilt into an obstruction of justice.

**V. Alternative request for a bill of particulars**

The Indictment's defects—e.g., the failure in Counts 1 and 2 to allege the essential execution element/event and mischaracterization in each of those counts of a "scheme" as an independent federal crime in itself; the inexplicable overlap of schemes as between Counts 1 and 2, creating a multiplicity defect where there is no basis factually in the Indictment to allege two separate schemes; the failure to contain the allegations of Counts 1 and 2 within the applicable statute of limitations, where the counts cover a year of conduct not within the statute; the failure to allege a cognizable theory of material misstatement or economic effect in the fraud counts; the inadequacy of the obstruction allegations in both vagueness and failure to articulate a valid theory of obstruction; the multiplicitous nature of the mirrored allegations in Counts 3-9 and 10-16; the defects in the sample-sale allegations as noted in defendant's separate motion to dismiss; the failure of the 18 U.S.C. § 1035 allegations to match the false claim requirements of the statute or to describe any cognizable basis to apply the statute; and the vague and incomplete allegations of an attempt to tamper—are not

curable by a bill of particulars. But in the absence of dismissal relief, the government's filing of a document stating the missing particulars for each of the allegations is alternatively requested simply to enable the defendant to know what she must defend against. District courts have discretion to order the government to disclose, for example, its witness list in advance of trial, particularly in document-intensive cases. *See*, *e.g.*, *United States v. Jackson*, 508 F.2d 1001, 1007 (7th Cir. 1975); *United States v. Napue*, 834 F.2d 1311, 1317–18 (7th Cir. 1987) (recognizing the district court's discretion over pretrial disclosure beyond the minima of Rule 16).

**Conferral**

Counsel for the defendant has conferred with the government regarding the *Brady* demand. The government states that it will respond to the motion.

WHEREFORE, Defendant Sania Khan requests that the Court dismiss the Indictment.

Respectfully submitted,

Daniel F. Rubio, Esq.
Florida Bar No. 1002594
Rubio, Rubio, & Rubio, PLLC
1107 N.E. 104th Street
Miami Shores, Florida 33138
Tel: (305) 892-5297

George J. Vila, Esq.
George J. Vila, P.A.
Florida Bar No. 141704
100 Almeria Avenue, Suite 205
Coral Gables, Florida 33134
Tel: (305) 445-2540

Klugh Wilson LLC
40 N.W. 3rd Street, PH1
Miami, Florida 33128
Tel: (305) 536-1191

By: /s/ Richard C. Klugh
Richard C. Klugh, Esq.
Florida Bar No. 305294