**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cr-33 |
| | ) | |
| SANIA KHAN | ) | |

**GOVERNMENT'S RESONSE TO DEFENDANT'S MOTION**
**TO SEVER OR BIFURCATE COUNT 20**
**AND TO EXCLUDE RELATED EVIDENCE**

Comes now the United States of America, by its counsel, Adam L. Mildred, United States Attorney for the Northern District of Indiana, through Kevin F. Wolff and Francis Sohn, Assistant United States Attorneys, and submits this response to the defendant's Motion to Sever or Bifurcate Count 20 and to Exclude Related Evidence. *See* DE 44.

The defendant's motion should be denied. There is no basis to sever Count 20 from the rest of the Indictment. All counts of the Indictment relate to the defendant's health care fraud scheme to submit false claims to Medicare and Indiana Medicaid and her numerous efforts to cover up her fraud. The first two counts of the Indictment charge the defendant with executing a scheme to defraud Medicare and Indiana Medicaid by submitting false claims seeking reimbursement for free samples of drugs administered to patients. Later counts charge the defendant with obstruction for falsifying records to conceal her fraud. Count 20 charges witness tampering because the defendant

1

instructed a witness to lie to federal investigators by telling them that the falsified records were not falsified but instead "corrected." Count 20 is properly joined and should not be severed. The evidence that supports Count 20 is direct evidence of the health care fraud scheme charged in Counts 1 and 2. It shows the defendant's concealment of the scheme, and it shows the defendant's awareness of the scheme and her consciousness of guilt. It also constitutes the separate crime of witness tampering.

## BACKGROUND

The defendant, Sania Khan, worked as the office manager of an ophthalmology practice. The defendant is charged with executing a scheme to defraud Medicare and Indiana Medicaid by submitting false claims for reimbursement of free samples of a particular medication known as Eylea. It is illegal to bill for free samples of Eylea, and every side of an Eylea sample box was marked with a warning that the sample was "NOT FOR SALE." It is generally permissible to seek reimbursement for doses of Eylea that a medical practice purchased. The claims that the defendant submitted were false because they purported to seek reimbursement for doses of Eylea that had been purchased by the ophthalmology practice and administered to patients, when in fact free samples of Eylea had been administered. The defendant submitted these false claims starting in 2019 and continuing into 2022. As part of the scheme, the Indictment alleges that the defendant, through several methods,

concealed many of the false claims. In April 2022, the ophthalmology practice received a Civil Investigative Demand requesting information for a federal investigation focusing on false claims. In 2022 and 2023, the defendant and an employee under her direction, E.J., changed patient records to falsify the records by removing references to sample doses of the medication. Federal agents contacted E.J. to interview E.J. To further conceal her scheme, the defendant, before an interview of E.J. by the government in 2024, directed E.J. to provide false information to federal investigators about the changes that the defendant and E.J. had made to falsify patient records.

The defendant's criminal conduct is charged in a 20-count Indictment. Counts 1 and 2 charge the defendant with committing schemes to defraud Medicare and Indiana Medicaid. The allegations contained in these counts include false billing (Indictment, ¶¶ 19-20), fraudulently altering the patient records (Indictment, ¶¶ 21-22), and directing E.J. to give federal investigators false information (Indictment, ¶ 23). Because the acts the defendant committed as part of her scheme also violate other federal statutes, the Indictment contains 18 additional charges. Counts 3 through 9 charge the defendant with obstruction of justice on particular dates in 2022 and 2023 relating to falsifying the medical records of seven particular patients. Counts 10 through 16 charge the defendant with making false statements involving Medicare, which relate to the same seven records falsifications as Counts 3 through 9. Counts 17

through 19 charge the defendant with three particular sales of sample drug doses. Count 20 charges the defendant with witness tampering in August 2024 by directing E.J. to provide false information to federal investigators, including false information about the alteration of patient records, with the intent to influence the grand jury investigation into the defendant's conduct.

At trial, the government expects that E.J. will testify. The government expects that E.J. will testify that, among other things, while E.J. was working at the ophthalmology practice, the defendant instructed E.J. to change medical records from indicating that patients received sample doses to falsely indicating that patients received doses that could be billed. The government expects that E. J. will also testify that after E.J. received a federal grand jury subpoena, the defendant told E.J. to tell investigators that the medical records were not changed but instead "corrected" because something was wrong with them. The government expects that E. J. will testify that this was false, as the records were not "corrected" but instead falsified. Accordingly, E.J.'s expected testimony will provide evidence supporting not only Count 20 that charges witness tampering, but also evidence of the scheme to defraud Medicare and Indiana Medicaid (Counts 1 and 2) and evidence of obstruction of justice by falsifying medical records (Counts 3 to 9). Indeed, the same expected testimony from E.J. will provide (1) evidence of the scheme to defraud Medicare and Indiana Medicaid because it shows the defendant was concealing the scheme

to falsely bill, (2) further evidence of the scheme to defraud Medicare and Indiana Medicaid because it shows the defendant was concealing her creation of false records, and (3) evidence of the witness tampering charge.

## ARGUMENT

### I.    Count 20 Is Properly Joined.

Federal Rule of Criminal Procedure 8(a) permits joinder of counts in three distinct situations: "when offenses are (1) of the same or similar character; (2) based on the same act or transaction; or (3) based on two or more acts or transactions connected together or constituting parts of a common scheme or plan." *United States v. Koen*, 982 F.2d 1101, 1111 (7th Cir. 1992). Moreover, courts "should construe Rule 8 broadly to allow joinder to enhance the efficiency of the judicial system . . . and to avoid expensive and duplicative trials, if judicial economy outweighs any prejudice to the defendant." *Id.* (cleaned up). Here, the first and third prongs of Rule 8 are most applicable.

Under Seventh Circuit precedent, the first prong of Rule 8(a) represents the "broadest of possible bases for joinder." *United States v. Alexander*, 135 F.3d 470, 476 (7th Cir. 1998). Because of this breadth, counts may be joined under the first prong "even if they are not temporally or evidentially related." *Id.* Instead, the proper analysis is to determine whether the counts are "categorically related." *United States v. Turner*, 93 F.3d 276, 283 (7th Cir. 1996). Among other things, counts may be categorically related – and therefore

properly joined – if they relate to the same basic kinds of conduct, even if they do not arise from violations of the same statute. *See id.* at 283-84. With respect to the third prong, the Seventh Circuit has held that joinder is proper if there is evidentiary overlap between the joined counts. *See United States v. Berardi,* 675 F. 2d 894, 900 (7th Cir. 1982).

Count 20 is properly joined. With respect to the first prong, Count 20 is of the "same or similar character" as Counts 1 through 19 because it relates to the same basic criminal conduct—the fraudulent billing of sample drugs to Medicare and Indiana Medicaid. Count 20 is "categorically related" to the other Counts because it involves one of the ways the defendant attempted to cover up the fraud. Counts 1 and 2 allege facts that the defendant committed health care fraud by submitting false claims for sample drugs. Count 20 relates to the defendant's efforts to cover up the health care fraud alleged in Counts 1 and 2. To conceal the fraud, as charged in Count 20, the defendant instructed E.J. to make false statements to the government about changes they had made to the medical records related to sample drugs that were administered and billed. These are the same medical records that provide evidence of the false billing scheme. Far from being "after-the-fact conduct, post-investigation" as the Defendant suggests (DE 44 at 11), the attempt to convince E.J. to lie to government investigators occurred while the criminal investigation was ongoing. Accordingly, Count 20 charges conduct that is "categorically related"

6

to other Counts because it is part of the scheme charged in other Counts of the Indictment. *See United States v. Balzano*, 916 F.2d 1273, 1280 (7th Cir.1990) (witness intimidation count properly joined to other charges because it "was clearly part and parcel of the same criminal scheme" because the defendant attempted to prevent a witness from testifying against him by means of intimidation). *See also United States v. Davis*, 724 F.3d 949, 955-56 (7th Cir. 2013) (noting that witness intimidation counts related to the defendant's attempt to prevent witnesses from testifying on underlying substantive counts constituted a "single scheme or plan" for purposes of joinder analysis).

With respect to the third prong, the evidentiary overlap is substantial, because establishing that the Defendant engaged in witness tampering will involve the same evidence as proving the underlying fraud that the witness tampering attempted to conceal. For example, the government expects E.J. to testify (1) that the defendant instructed E.J. to change medical records from indicating that patients received sample doses to falsely indicating that patients received doses that could be legally billed; (2) that after E.J. received a federal grand jury subpoena, the defendant told E.J. to tell investigators that the medical records were not changed but instead "corrected" because something was wrong with them; and (3) that this was false, as the records were not "corrected" but instead falsified. All of this evidence provides proof of the scheme to commit health care fraud because it is evidence of concealment,

and also provides evidence of the witness tampering charge. Indeed, even if Count 20 had not been charged, E.J.'s testimony would be admissible as evidence of concealment and the defendant's consciousness of her guilt. *See United States v. Thomas*, 986 F.3d 723, 730 (7th Cir. 2021) (noting that efforts to conceal a fraud scheme are part of the scheme itself because "the object of fraud is to deceive without detection"); *United States v. Jackson*, 572 F.2d 636, 639 (7th Cir. 1978) (noting that certain forms of post-crime conduct may give rise to an inference of consciousness of guilt, as well as an inference from consciousness of guilt to actual guilt of the crime charged).

## II.   Count 20 Should Not Be Severed.

Properly joined counts will only be severed due to a risk of "prejudicial spillover" if the defendant overcomes "the dual presumptions that a jury will capably sort through the evidence and will follow limiting instructions from the court to consider each count separately." *Turner*, 93 F.3d at 284. *See also United States v. Kelly*, 99 F.4th 1018, 1026 (7th Cir. 2024) (citing *Turner*); *United States v. Peterson*, 823 F.3d 1113, 1124 (7th Cir. 2016) (same).

Without addressing these dual presumptions, the defendant simply argues that Count 20 must be severed due to "extreme and undue prejudice that will result" if it is tried with the other counts. DE 44 at 6. The defendant apparently wants to testify solely about her witness tampering without being subject to cross-examination on the rest of her fraud scheme, and she alludes

8

vaguely to some impact on her choice of counsel without providing any details. Because none of the defendant's arguments are well-founded, there is no prejudice. Accordingly, as Count 20 is otherwise properly joined, severance is unwarranted.

### A.   Joinder Does Not Harm the Defendant's Fifth Amendment Right Not to Testify.

The defendant argues that severance is appropriate because she may wish to testify in her own defense on Count 20, while not testifying on Counts 1 through 19. DE 44 at 9-9. This is not permitted under well-established Supreme Court precedent, which holds that "when a defendant chooses to testify in a criminal case, the Fifth Amendment does not allow him to refuse to answer related questions on cross-examination." *Kansas v. Cheever*, 571 U.S. 87, 94 (2013). As the Seventh Circuit has stated, "[a] witness may not self-select which questions he will answer and which ones he will not." *See United States v. Underwood*, 88 F.4th 705, 711 (7th Cir 2023). Here, if the defendant were to choose to testify, she should be required to answer all related questions, rather than cherry-pick her favored topics of testimony. Accordingly, the defendant's right not to testify does not provide a reason to sever Count 20.

### B.   The Defendant's Other Claims of Prejudice Fail to Provide any Reason to Sever Count 20.

None of the defendant's remaining claims of prejudice provides a basis to sever. First, the defendant makes repeated reference to the fact that she was

9

represented by current counsel during the period when the alleged witness tampering occurred. *See* DE 44 *passim*. She argues that a joint trial could place the attorneys "in the position of becoming actual or effective witnesses." DE 44 at 7. The defendant also notes that E.J. had her own counsel. DE 44 at 2. But the defendant fails to explain how her current counsel could be a witness or provide any detail as to the way in which this might occur. It is difficult to understand why defense counsel would be involved in the defendant's coaxing a witness to provide false information to the government. Accordingly, the defendant fails to show how any prejudice would result or how this merits severance of Count 20.[1]

Second, the defendant's reliance on *United States v. Maxwell*, 534 F.Supp.3d 299 (S.D.N.Y. 2021)—in which the defendant faced Mann Act sex-trafficking charges and perjury charges—does not provide any reason for prejudice here. In the *Maxwell* case, the perjury charges related to sex-trafficking conduct that occurred during the 1999-2002 time period (given during a deposition approximately 20 years later), while the substantive Mann Act counts related to sex-trafficking conduct related to the 1994-1997 time

---

[1] The defendant also claims that E.J.'s counsel and the government "expressly approved E.J.'s continued employment with the defendant." DE 44 at 4. Similarly, the defendant claims that "the government approved the continued interaction of their witness and the defendant, even while the defendant was represented by counsel in the matter." DE 44 at 8. These statements are wrong. The government did not "expressly approve" any employment for E.J. and has no control over how E.J. is employed or with whom E.J. interacts.

period. *See* Defendant's Memorandum of Law in Support of Motion to Sever at 10, *United States v. Maxwell*, No. 1:20-CR-00330-PAE (S.D.N.Y. 2020) ECF No. 120. Under such circumstances, Judge Alison Nathan held that the risk of prejudice—that "the evidence presented on the Mann Act counts may prejudice the jury's ability to fairly evaluate Maxwell's truthfulness in her deposition, a critical element of the perjury counts"—was strong enough to warrant severance, especially since "a limiting instruction may be inadequate to mitigate these risks given the nature of the allegations involved." *Maxwell*, 534 F.Supp.3d. at 320-21.

The allegations here present an entirely different picture. The alleged witness tampering here occurred within the time period of the health care fraud schemes alleged in Counts 1 and 2, and approximately 18 months after the date of the last false statement and obstructions charges in Counts 3 through 15—not almost 20 years, as was the case in *Maxwell*. Additionally, the alleged witness tampering related directly to the conduct underlying Counts 1 through 19—not to uncharged conduct, as was the case in *Maxwell*. The Seventh Circuit has found the substantial evidentiary overlap between fraud counts and obstruction counts to be a reason to join counts, explaining "the accumulated evidence of fraud tended to establish the motive for [the defendant's] obstruction of justice, and, on the other hand, the accumulated evidence of the [obstruction conduct] tended to establish [the defendant's]

11

guilty consciousness of the fraud." *United States v. Rajewski*, 526 F.2d 149, 155 (7th Cir. 1975). Because Count 20 is an obstruction count that has such evidentiary overlap with the underlying fraud in the remaining Counts, joinder was proper and severance is unwarranted. *See id.* (severance of obstruction counts and substantive fraud counts not warranted "the evidence in the separate trials would have been substantially the same as was presented in toto in the one trial.").

Third, the defendant also argues that tampering evidence is similar to flight evidence, and that the latter is "only marginally probative" of guilt. DE 44 at 10. The defendant then reasons that "the alleged tampering conduct is simply too attenuated from the underlying fraud allegations to be probative of anything," and that evidence of such conduct should be excluded under Federal Rule of Evidence 403 because it would create a "prejudicial sideshow." *Id.* at 11.

These arguments fail on multiple grounds. While a defendant may flee from law enforcement for a number of reasons unrelated to the underlying substantive misconduct (e.g., generalized fear of law enforcement or an arrest warrant), the reason to attempt to get a witness to lie to government investigators is because the defendant knows that the truth would harm her case. In other words, while the link between flight evidence and consciousness of guilt is sometimes speculative, the link between tampering evidence and

12

consciousness of guilt seldom is. For this reason, courts have held that an attempt to prevent a witness from testifying "raises an inference of consciousness of guilt which raises an inference of actual guilt." *United States v. Harmon*, 721 F.3d 877, 884 (7th Cir. 2013). *See also Untied States v. Jackson*, 70 F.4th 1005, 1014 (7th Cir. 2023) (noting that "reliable evidence of threats can be probative of a defendant's consciousness of guilt"); *United States v. Miller*, 276 F.3d 370, 373 (7th Cir. 2002) ("Evidence that the defendant threatened a potential witness or a person cooperating with a government investigation is relevant to show the defendant's consciousness of guilt.").

In addition, the notion that "the tampering conduct is simply too attenuated from the underlying fraud allegations to be probative of anything" is wrong. As discussed throughout this response, the tampering conduct is categorically and evidentially related to the underlying fraud conduct; as such, the specter of a "prejudicial sideshow" is non-existent. In short, because the tampering evidence is highly probative, and because no "prejudicial sideshow" is likely to emerge, the defendant's request to exclude tampering evidence in the fraud case pursuant to Rule 403 should be denied.

## CONCLUSION

For the reasons stated above, Count 20 was properly joined and should not be severed. Accordingly, the Court should deny the defendant's motion (DE 44) in its entirety.

Respectfully submitted,

ADAM L. MILDRED
United States Attorney

/s/ Kevin F. Wolff
Kevin F. Wolff
Francis Sohn
United States Attorney's Office
Northern District of Indiana
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
Phone: (219) 937-5500

14