**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CASE NO. 1:25-CR-33-HAB-ALT |
| SANIA KHAN, | |

**OPINION AND ORDER**

On May 28, 2025, a federal grand jury indicted Defendant Sania Khan ("Khan") in a twenty-count indictment (the "Indictment"). (ECF No. 1). Before the Court is Khan's Motion to Dismiss Counts 17–19 for lack of specificity and failure to state an offense under Rule 12(b)(3)(B)(iii) and (v). (ECF No. 51). The motion is fully briefed (ECF Nos. 64, 75) and thus ripe for ruling. For the reasons set forth below, the Motion to Dismiss will be denied.

## I. BACKGROUND

Counts 1 and 2 of the Indictment charge Khan with committing health care fraud for executing or attempting to execute a scheme to defraud Medicare and Indiana Medicaid, respectively, in violation of 18 U.S.C. § 1347. Included with those counts is an explanation of the alleged schemes: Khan and her husband acquired an ophthalmology practice in 2019, with Khan's husband serving as the licensed physician and Khan working as the office manager. (ECF No. 1 ¶¶ 8–9). Between 2019 and 2024, Khan's husband would administer free samples of an injected eye medication to patients, after which Khan allegedly would bill Medicare or Indiana Medicaid for those free samples in violation of federal law prohibiting the sale of sample drugs. (*Id.* ¶¶ 11–16). The Indictment further alleges that the goal of the schemes "was to seek reimbursement from

Medicare and Indiana Medicaid for commercial and purchased doses of a particular medication when sample doses were actually administered," (*Id.* ¶ 19) because the practice "sometimes failed to obtain appropriate prior authorization for administration of commercial and purchased medication doses for patients, and these claims were denied for reimbursement" (*Id.* ¶ 20). To recover the lost funds from those denials, Khan allegedly submitted false claims to Medicare and Indiana Medicaid by billing for commercial doses when only a sample dose was administered on the date of service. (*Id.*) In furtherance of this scheme and to conceal the false claims, Khan and an employee under her direction allegedly accessed and altered patient records to remove evidence of sample doses. (*Id.* ¶ 21). Additionally, the Indictment alleges that Khan "directed, advised, and attempted to corruptly persuade the employee to provide false information to federal investigators about the schemes and the alterations to the patient records," all in an attempt to "obstruct the investigation and to conceal the prior alterations to patient records." (*Id.* ¶ 23).

Counts 3 through 9 of the Indictment charge Khan with obstructing justice in violation of 18 U.S.C. § 1519 and 18 U.S.C. § 2 by way of making false entries in the medical records of seven particular patients. Counts 10 through 16 of the Indictment charge Khan with making false statements relating to health care matters involving Medicare in violation of 18 U.S.C. § 1035 and 18 U.S.C. § 2, likewise involving alleged false entries in the medical records of those same seven patients. Counts 17 through 19 charge Khan with three illegal sales of sample drugs to three particular patients in violation of 21 U.S.C. §§ 331(t) and 333(b)(1)(B). Count 20 charges Khan with witness tampering in violation of 18 U.S.C. § 1512(b)(1).

On July 12, 2026, Khan filed a Motion to Bifurcate or Sever Count 20 (ECF No. 44) for which she requested an evidentiary hearing with an in-camera review of evidence relating to a potential advice-of-counsel defense. Shortly thereafter, on July 16, 2026, Khan filed five additional

pretrial motions: (a) Motion for Release of Brady Materials (ECF No. 49); (b) Motion to Dismiss the Indictment (ECF No. 50); (c) Motion to Dismiss Counts 17–19 for lack of specificity and failure to state an offense (ECF No. 51); (d) Motion to Dismiss Counts 17–19 for selective or vindictive prosecution (ECF No. 52); and (e) Motion to Exclude Evidence (ECF No. 53). On August 21, 2026, Khan filed a Notice of Request for Oral Argument on the other pending pretrial motions. (ECF No. 72).

The Court held an evidentiary hearing as to the Motion to Bifurcate as well as oral arguments on the other pending pretrial matters on September 29, 2026. (ECF No. 83). During the hearing, the Court commenced an in-camera review of evidence pertaining to Khan's advice-of-counsel defense, though ultimately no evidence was taken and the in-camera portion was concluded. The Court then heard oral arguments and thereafter orally denied Khan's Motion for Brady Materials (ECF No. 49) as well as granted in part and denied in part the Motion to Exclude Evidence (ECF No. 53). The Court noted the other four motions (ECF Nos. 44, 50, 51, 52) remained under advisement.

## II. LEGAL STANDARD

"The Fifth Amendment guarantee of the right to indictment by a grand jury, its protection against double jeopardy, and the Sixth Amendment guarantee that a defendant be informed of the nature of the charges against him establish the minimum requirements for an indictment." *United States v. Fassnacht*, 332 F.3d 440, 444 (7th Cir. 2003). To that end, Federal Rule of Criminal Procedure 7 requires that an indictment must cite the statute allegedly violated and "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." Fed. R. Crim. P. (7)(c)(1). Rule 12 provides that, before trial, a defendant may challenge the sufficiency of an indictment in several

ways, including by arguing that the indictment lacks specificity, Rule 12(b)(3)(B)(iii), or that it fails to state an offense, Rule 12(b)(3)(B)(v).

"In determining whether an indictment charges a cognizable offense, [the court is] bound by the four corners of the indictment, must accept the truth of the allegations in the indictment, and cannot consider evidence that does not appear on the face of the indictment." *United States v. Kelly*, 874 F.3d 1037, 1046-47 (9th Cir. 2017); *accord United States v. DiFonzo*, 603 F.2d 1260, 1263 (7th Cir. 1979) (holding that a defendant moving to dismiss an indictment for failure to state an offense may not invoke facts that "transcend the four-corners of" the indictment). "An indictment must notify the defendant of the nature of the charges against him, but it need not precisely mimic the words of the relevant statute." *United States v. Schaul*, 962 F.3d 917, 922 (7th Cir. 2020). "[T]he sufficiency of an indictment is to be reviewed practically, with a view to the indictment in its entirety, rather than in any 'hypertechnical manner.'" *United States v. Fassnacht*, 332 F.3d 440, 445 (7th Cir. 2003). "An indictment which includes each of the elements of the offense charged, the time and place of the accused's conduct which constituted a violation, and a citation to the statute or statutes violated is sufficient to pass this test." *Id.* at 446.

## III. DISCUSSION

Khan first challenges the legal sufficiency of Counts 17–19 of the Indictment because they do not identify "a purchaser, a price, a payment, a bargain, an offer, or a transfer for consideration" nor do they "allege that any patient purchased the sample, that Medicare took title to it, that any party negotiated for it, or that anyone paid a price for the sample itself." (ECF No. 51 at 7). She further argues that the alleged illicit conduct—administering sample drugs and then submitting claims to Medicare/Indiana Medicaid for reimbursement after the fact—does not constitute a "sale" under 21 U.S.C. § 353(c)(1).

Her legal sufficiency argument can be dealt with quickly. Counts 17 through 19 allege that on or between October 1 and October 15, 2021 [Counts 17 and 18] and April 4 and April 1, 2022 [Count 19], in the Northern District of Indiana, Sania Khan "did knowingly sell and offer to sell a drug sample within the meaning of Title 21, United States Code, section 353(c)(1)," involving three different patients identified by their initials, "[a]ll in violation of 21 U.S.C. §§ 331(t) and 333(b)(1)(B)." (ECF No. 1 ¶¶ 37–39). Reading the Indictment "in its entirety" and not in a "hypertechnical manner," *id.* at 445, the Indictment alleges that Khan violated 21 U.S.C. §§ 331(t) and 333(b)(1)(B) by thrice selling drug samples to three different patients through this fraudulent administration-then-reimbursement scheme. These Counts, read in conjunction with the description of the overall scheme as outlined in Counts 1 and 2, plainly meet the requirements for a legally sufficient indictment: (1) the elements of the offense; (2) the time and place of the conduct which allegedly constituted a violation; and (3) a citation to the statute or statutes violated. *Fassnacht*, 332 F.3d at 446. Thus, the Indictment includes "enough factual information to enable the defendant[ ] to identify the conduct on which the government intends to base its case." *Id.* That it does not include the specifics Khan seeks—purchasers, prices, offers, consideration, and any other basic requirements to form a legally cognizable contract—is immaterial, and requiring the Government to allege those unnecessary facts "ask[s] too much of the indictment." *Id.*; *see also United States v. Mosley,* 786 F.2d 1330, 1334 (7th Cir.), *cert. denied,* 476 U.S. 1184, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986) ("When an indictment contains all the essential elements of the charged offense, the accused may obtain the factual proof supporting the charge, if vital to his defense, by a motion for a bill of particulars.").

As the Government points out, Khan's primary complaint with these charges is that she does not believe the alleged conduct (administering a sample drug and then billing

Medicare/Medicaid as if the physician had administered a commercial dose) constitutes a "sale" under the statute. In support, Khan cites only to Black's Law Dictionary's definition of "sale" ("the transfer of property or title for a price") and the statutory framework and legislative history of the Prescription Drug Marketing Act ("PDMA") for her assertion that the statute doesn't cover "billing" like this, only sales.

In response, the Government contends Khan's argument is overly technical and that if the Court were to accept the limited definition of "sale" as "correct that the involvement of a third-party payor means that physician-administered drugs are not 'sold,' then the PDMA's ban on the sale of drug samples would only come into play for cash-paying patients." (ECF No. 64 at 7). That reading, the Government says, would "effectively gut the PDMA's ban on the sale of drug samples, since more than 90 percent of Americans pay for health care using health insurance." (*Id.*) Additionally, the Government points to multiple cases where both individuals and pharmaceutical companies were prosecuted for billing Medicare for drug samples as further proof that this is not a novel prosecution. *See United States v. TAP Pharmaceutical Products Inc.*, 1:01-CR-10354 (D. Mass. 2001); *United States v. Rodney Mannion*, 1:00-CR-10066 (D. Mass. 2000); *United States v. Nagalingam*, 1998 WL 739822 (6th Cir. Oct. 6, 1998). Khan disputes the relevance of each of these, but especially *Nagalingam*, where the sale of drug samples was directly to the patient, rather than a submission to Medicare for reimbursement.

While Khan presents some interesting arguments, the Court agrees with the Government that simple logic wins the day. If the Court were to interpret "sale" as narrowly as Khan suggests—where all parts of the transaction occur simultaneously and involve only a direct transaction between buyer (physician, pharmacist, or drug company) and seller (patient)—the PDMA's ban of the sale of drug samples would be virtually toothless. Further, Khan's interpretation ignores the

reality of healthcare costs and payment in this country, where "[c]ombined, private health insurers and State and Federal Governments finance almost 85% of the medical care administered to U.S. residents." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 592 (2012) (Ginsburg, J., concurring). As Justice Ginsburg explained in her *Sebelius* concurrence, "[h]ealth insurance is a means of paying for this care, nothing more." *Id.* at 608. And those with health insurance "pay for medical care in advance (instead of at the point of service) and through insurance (instead of out of pocket.)" *Id.* At its core, the basic transaction is just as simple as Khan's Black's Law Dictionary reference: a "sale" is the transfer of something for a price. While the payment system might be more complicated in a healthcare context than buying something for cash at your local grocery store, it is nevertheless a transfer of something for a cost.

This definition can be simplified helpfully by *The Simpsons*: when asked how $20 could buy many peanuts, Homer Simpson's brain responded "Money can be exchanged for goods and services."[1] Here, Khan is alleged to have attempted to exchange a good or service (Eylea) for money. It matters not for Counts 17–19 that the money would come out-of-pocket from the patient or as a reimbursement from health insurance.

Because the Court agrees that this action may constitute a "sale" under 21 U.S.C. § 353(c)(1), Counts 17–19 of the Indictment sufficiently state an offense.

## IV. CONCLUSION

For these reasons, Khan's Motion to Dismiss Counts 17–19 (ECF No. 51) is DENIED.

**SO ORDERED** this 30th day of October 2026.

s/Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT

[1] The Simpsons, *Boy Scoutz 'n the Hood* (20th Television, 1993).