**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CASE NO. 1:25-CR-33-HAB-ALT |
| SANIA KHAN, | |

**OPINION AND ORDER**

On May 28, 2025, a federal grand jury indicted Defendant Sania Khan ("Khan") in a twenty-count indictment (the "Indictment"). (ECF No. 1). Before the Court is Khan's Motion to Dismiss Counts 17–19 for selective or vindictive prosecution pursuant to Federal Rule of Criminal Procedure 12(b)(3)(A)(iv) (ECF No. 52), which the parties have fully briefed (ECF Nos. 65, 77). For the reasons set forth below, the Motion to Dismiss will be denied.

## I. BACKGROUND

Counts 1 and 2 of the Indictment charge Khan with committing health care fraud for executing or attempting to execute a scheme to defraud Medicare and Indiana Medicaid, respectively, in violation of 18 U.S.C. § 1347. Included with those counts is an explanation of the alleged schemes: Khan and her husband acquired an ophthalmology practice in 2019, with Khan's husband serving as the licensed physician and Khan working as the office manager. (ECF No. 1 ¶¶ 8–9). Between 2019 and 2024, Khan's husband would administer free samples of an injected eye medication to patients, after which Khan allegedly would bill Medicare or Indiana Medicaid for those free samples in violation of federal law prohibiting the sale of sample drugs. (*Id.* ¶¶ 11–16). The Indictment further alleges that the goal of the schemes "was to seek reimbursement from Medicare and Indiana Medicaid for commercial and purchased doses of a particular medication

when sample doses were actually administered," (*Id.* ¶ 19) because the practice "sometimes failed to obtain appropriate prior authorization for administration of commercial and purchased medication doses for patients, and these claims were denied for reimbursement" (*Id.* ¶ 20). To recover the lost funds from those denials, Khan allegedly submitted false claims to Medicare and Indiana Medicaid by billing for commercial doses when only a sample dose was administered on the date of service. (*Id.*) In furtherance of this scheme and to conceal the false claims, Khan and an employee under her direction allegedly accessed and altered patient records to remove evidence of sample doses. (*Id.* ¶ 21). Additionally, the Indictment alleges that Khan "directed, advised, and attempted to corruptly persuade the employee to provide false information to federal investigators about the schemes and the alterations to the patient records," all in an attempt to "obstruct the investigation and to conceal the prior alterations to patient records." (*Id.* ¶ 23).

Counts 3 through 9 of the Indictment charge Khan with obstructing justice in violation of 18 U.S.C. § 1519 and 18 U.S.C. § 2 by way of making false entries in the medical records of seven particular patients. Counts 10 through 16 of the Indictment charge Khan with making false statements relating to health care matters involving Medicare in violation of 18 U.S.C. § 1035 and 18 U.S.C. § 2, likewise involving alleged false entries in the medical records of those same seven patients. Counts 17 through 19 charge Khan with three illegal sales of sample drugs to three particular patients in violation of 21 U.S.C. §§ 331(t) and 333(b)(1)(B). Count 20 charges Khan with witness tampering in violation of 18 U.S.C. § 1512(b)(1).

On July 12, 2026, Khan filed a Motion to Bifurcate or Sever Count 20 (ECF No. 44) for which she requested an evidentiary hearing with an in-camera review of evidence relating to a potential advice-of-counsel defense. Shortly thereafter, on July 16, 2026, Khan filed five additional pretrial motions: (a) Motion for Release of Brady Materials (ECF No. 49); (b) Motion to Dismiss

the Indictment (ECF No. 50); (c) Motion to Dismiss Counts 17–19 for lack of specificity and failure to state an offense (ECF No. 51); (d) Motion to Dismiss Counts 17–19 for selective or vindictive prosecution (ECF No. 52); and (e) Motion to Exclude Evidence (ECF No. 53). On August 21, 2026, Khan filed a Notice of Request for Oral Argument on the other pending pretrial motions. (ECF No. 72).

The Court held an evidentiary hearing as to the Motion to Bifurcate as well as oral arguments on the other pending pretrial matters on September 29, 2026. (ECF No. 83). During the hearing, the Court commenced an in-camera review of evidence pertaining to Khan's advice-of-counsel defense, though ultimately no evidence was taken and the in-camera portion was concluded. The Court then heard oral arguments and thereafter orally denied Khan's Motion for Brady Materials (ECF No. 49) as well as granted in part and denied in part the Motion to Exclude Evidence (ECF No. 53). The Court noted the other four motions (ECF Nos. 44, 50, 51, 52) remained under advisement.

## II. LEGAL STANDARD

Under Federal Rule of Criminal Procedure 12(b), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). This includes motions alleging "a defect in instituting the prosecution" due to "selective or vindictive prosecution." Fed. R. Crim. P. 12(b)(3)(A)(iv). "Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009) (citation omitted); *see also United States v. Khan*, No. 15-CR-00286, 2017 WL 2362572, at *18 (N.D. Ill. May 31, 2017) ("[W]hile an indictment may be dismissed if subject to a defense that raises only a question of law, a defense relating to the strength of the government's evidence

ordinarily must wait for trial." (citation omitted)). Therefore, in deciding such a motion, the Court must accept the allegations in the indictment as true. *Moore*, 563 F.3d at 586.

## III. DISCUSSION

From the outset, Khan's claims are half-baked and confusing, leaving both the Government and the Court scrambling to decipher what, exactly, she wants. In her Motion to Dismiss (ECF No. 52), Khan nominally asserts a "selective or vindictive prosecution"[1] claim, though the standards for those claims—or any caselaw supporting the motion—appear nowhere in her brief. Rather, the motion focuses solely on the President's Executive Order 14294 entitled "Fighting Overcriminalization in Federal Regulations" for the notion that Khan's prosecution is the "target" of the Executive Order. Khan believes the prosecution "embodies the overcriminalization of regulatory offenses" given only 2.7% of the medication doses purchased or received by the practice

[1] Khan's briefing and oral argument appear to use "selective" and "vindictive" interchangeably, and the Government responding only to the motion as it relates to "selective" prosecution. In her Reply, Khan latched on to the Government's failure to respond to the "vindictive" portion, arguing that "the stacking of three ten-year PDMA trafficking counts on top of healthcare fraud and false-statements counts for the same billing conduct may bear on the question of prosecutorial motive" and that the vindictive prosecution "claim is preserved pending the discovery sought in Section IV." (ECF No. 77 at 9).

The Court is unconvinced that this claim was ever made, much less preserved. To establish vindictive prosecution, a defendant must show that he was prosecuted in retaliation for the exercise of a protected statutory or constitutional right. *United States v. Cooper*, 461 F.3d 850, 856 (7th Cir. 2006). Specifically, a defendant "must affirmatively show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus, such as a personal stake in the outcome of the case or an attempt to seek self-vindication. *United States v. Jarrett*, 447 F.3d 520, 525 (7th Cir 2006) (quoting *United States v. Falcon*, 347 F.3d 1000, 1004 (7th Cir. 2003)). As noted herein, Khan's initial motion on the matter focused entirely on presidential Executive Order 14294 and how the Government's decision to prosecute these counts undermined the purpose of the Executive Order; no "selective" or "vindictive" prosecution argument under *Armstrong* or any case law was presented. But even if it were, at no point in briefing or at oral argument has Khan ever provided any analysis or evidence—objective or otherwise—beyond the conclusory statement above that there might have been some inkling of vindictiveness in this prosecution.

Accordingly, this argument has been waived. "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (collecting cases); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim.") (citation omitted).

were sample drugs and "the use of drug samples as purchased drug replacements" is "a practice which is normal, common, and not criminalized under the PDMA." (*Id.* at 2, 3).

For its part, the Government responded to the motion by arguing the Executive Order is not judicially enforceable or even applicable here, given that Khan has been charged with statutory rather than criminal *regulatory* offenses. (ECF No. 65). The Government further argues that, under *United States v. Valenzuela*, 931 F.3d 605, 609 (7th Cir. 2019), Khan must show that the decision to prosecute her was "based on invidious criteria such as race, religion, or other arbitrary classifications," a standard which Khan neglected to even attempt to present in her motion.

Khan's Reply, containing arguments echoed in her oral argument, essentially boils down to two theories: First, the Government elected to prosecute Khan rather than any of the doctors who employed the same "replacement" tactic in the practice, which she claims raises an inference of selective or vindictive prosecution concerns. Second, the "arbitrary classification" is an investigation based on a criminal theory "with no reported decision and no contested conviction in thirty-eight years." (ECF No. 77 at 5). Rather than attempting to target prosecutorial discretion, Khan instead now appears to seek discovery against the *investigating agency* as well as an evidentiary hearing to determine whether she was "singled out by the investigating agency for reasons unrelated to legitimate enforcement priorities." *Id.* at 8. *But see id.* at 2 ("Ms. Khan's motion does not sue to enforce Executive Order 14294 or claim a private right under it. She invokes instead the *constitutional limits on prosecutorial discretion* . . . ." (emphasis added)).

Khan's multiple different arguments and requests leave the Court in the lurch. It is near impossible to tell which Rule 12(b)(3)(A)(iv) theory she is attempting to assert; her arguments at each stage have flipped from selective prosecution on behalf of the prosecutors based on an Executive Order, to selective enforcement against the investigating agency (and perhaps also the

prosecutors), to vindictive prosecution, and back again. Under any standard, however, Khan's attempts clearly miss the mark.

Government prosecutors "necessarily have wide discretion over whether, how, and when to bring a case." *United States v. Ribota*, 792 F.3d 837, 840 (7th Cir. 2015). Thus, "[i]n the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). That said, the broad scope of prosecutorial discretion is still subject to constitutional constraints, including "that the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).

To establish selective prosecution, the defendant must show (1) that she was singled out for prosecution while other violators similarly situated were not prosecuted; and (2) the decision to prosecute her was based on an arbitrary classification such as race, religion, or the exercise of constitutional rights. *United States v. Monsoor*, 77 F.3d 1031, 1034 (7th Cir. 1996); *see also Armstrong*, 517 U.S. at 465 (defendant must show that the federal prosecutorial policy had a "discriminatory effect" and was motivated by a "discriminatory purpose"). A defendant challenging an indictment on selective prosecution grounds bears a heavy burden. *See Reno v. Am.-Arab Anti–Discrimination Comm.,* 525 U.S. 471, 489 (1999) (the standard is "particularly demanding, requiring a criminal defendant to introduce 'clear evidence' displacing the presumption that a prosecutor has acted lawfully."); *United States v. Peskin*, 527 F.2d 71, 86 (7th Cir. 1975) (absent presentation of "facts sufficient to raise a reasonable doubt about the

prosecutor's purpose," the "weighty presumption of the legality of the prosecution remains unshaken").

A selective enforcement claim is analyzed under much the same standard.[2] The Seventh Circuit recently reiterated that "[s]elective enforcement occurs when police investigate people with one protected characteristic but do not investigate similarly-situated people without that protected characteristic." *United States v. Pennington*, 2026 WL 2620435, at *10 (7th Cir. Sept. 4, 2026) (citing *United States v. Conley*, 5 F.4th 781, 789 (7th Cir. 2021)). And because selective enforcement "is an equal protection claim, it requires proof that a law enforcement officer's actions had a discriminatory effect and were motivated by a discriminatory purpose." *Id.* Thus, to be entitled to an evidentiary hearing on a selective enforcement claim, a defendant initially must make "a prima facie case based on facts sufficient to raise a reasonable doubt about the officers' purpose." *Id.* at *11 (quoting *United States v. Kerley*, 787 F.2d 1147, 1148 (7th Cir. 1986)).

No matter which path she elects to take, Khan's claims fail because she has not alleged discrimination on the basis of a *protected* characteristic. Her primary arguments are that she, a manager, has been prosecuted while doctors at the practice who conducted similar billing activity were not, and that no one else has been charged under this Government theory for over thirty years. But the doctor-versus-manager distinction has no constitutional weight, and the "mere conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *United States v. Niemiec*, 611 F.2d 1207, 1209 (7th Cir. 1980). As the Sixth Circuit helpfully explained:

---

[2] The Court notes that, following the Seventh Circuit's decision in *Conley*, a defendant claiming selective enforcement must be proven only by a preponderance of the evidence as opposed to a selective prosecution claim's "clear evidence" standard. *See Conley*, 5 F.4th at 796. This distinction is immaterial here, however, because Khan has provided no argument that there was discriminatory intent or purpose from either the prosecutors or the investigating agency based on a *protected* characteristic.

> There is no right under the Constitution to have the law go unenforced against you, even if you are the first person against whom it is enforced, and even if you think (or can prove) that you are not as culpable as some others who have gone unpunished. The law does not need to be enforced everywhere to be legitimately enforced somewhere; and prosecutors have broad discretion in deciding whom to prosecute.

*Futernick v. Sumpter Township*, 78 F.3d 1051, 1056 (6th Cir. 1996), overruled on other grounds by *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

At the outset of her Reply brief, Khan nominally asserts that the decision to prosecute her, rather than other physicians at the practice who engaged in similar billing activity, "raises selective and vindictive prosecution concerns, which may be based on her race, religion, or the exercise of her constitutional right to counsel during the investigatory period." (ECF No. 77 at 1). While race, religion, and exercise of constitutional rights are indeed the types of "arbitrary classifications" envisioned by *Armstrong* and its successors, *see Monsoor*, 77 F.3d at 1034, Khan has provided no evidence or analysis from which the Court could infer that one of those classifications might have been at play here. Importantly, during the hundreds of pages of briefing and the many hours of oral argument in this case, Khan's race and religion have never been established or even referenced by her counsel. And though references to her exercise of her right to counsel appear in other briefings, *see* ECF No. 44, at no point has she connected the dots between her exercise of that right and her claims in *this* motion. As with her undeveloped vindictive prosecution argument, the Court finds any argument based on her race, religion, or exercise of her constitutional right to counsel waived. *See Berkowitz*, 927 F.2d at 1384 ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues).").

Ultimately, Khan has provided neither argument nor evidence to support any inference that there was some constitutionally-suspect discrimination in either the enforcement or prosecution of

her case. Simply put, the Court sees no reason to further delay trial for Khan's counsel to conduct costly shot-in-the-dark discovery against the Government based on no more than her hunch that *something* nefarious *must* be going on for her to have been charged with these crimes now.

## IV. CONCLUSION

For these reasons, Khan's Motion to Dismiss Counts 17–19 for selective or vindictive prosecution (ECF No. 52) is DENIED.

**SO ORDERED** this 30th day of October 2026.

s/ Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT